IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GARY DENNIS,                                    07-CV-1652-BR

        Plaintiff,                       OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


BRUCE W. BREWER
419 5th Street
Oregon City, Oregon 97045
(503) 722-8833

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158


1  -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LEISA A. WOLF**
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Gary Dennis seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    For the following reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

    Plaintiff filed his first application for DIB on November 11, 1996.  Tr. 57-59.  It was denied initially and on

2  -   OPINION AND ORDER

reconsideration.  Tr. 41, 42-46.[1]  Plaintiff filed his first
application for SSI on November 15, 1996.  Tr. 289-91.  It also
was denied initially and on reconsideration.  Tr. 292-95, 297-99.
Both applications alleged a disability onset date of January 1,
1991.  Tr. 57-59, 289-91.

      An Administrative Law Judge (ALJ) held a hearing on June 17,
1998, and issued an opinion on July 30, 1998.  Tr. 36, 301-17.
Plaintiff requested the Appeals Council to review the opinion.
On July 31, 2000, the Appeals Council remanded the case to the
ALJ for a second hearing.  Tr. 323-26.  The ALJ held a second
hearing on May 9, 2001, and issued a second opinion on June 15,
2001.  Tr. 337-42, 446-59.  Plaintiff again requested the Appeals
Council to review the opinion.  On September 12, 2003, the
Appeals Council remanded the case again.  Tr. 470-71.

      Meanwhile Plaintiff had filed a new DIB claim on August 28,
2001, which was denied initially and on reconsideration.
Tr. 484, 485.  In addition, Plaintiff filed a second SSI
application on September 5, 2001, which was also denied initially
and on reconsideration.  Tr. 494, 507.  On February 18, 2007, the
new DIB and SSI claims were consolidated with the case that was
on remand.  Tr. 486.

      A third hearing was held before a different ALJ on May 13,

_____

      [1] Citations to the official transcript of record filed by
the Commissioner on February 5, 2008, are referred to as "Tr."

3   -   OPINION AND ORDER

2004.  Tr. 474-77.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff amended his alleged onset date to January 1, 1996, at the hearing.  Tr. 912.

The ALJ issued a decision on August 18, 2004, in which he found Plaintiff was not entitled to benefits.  Tr. 19-35.  That decision became the final decision of the Commissioner on June 8, 2007, when the Appeals Council denied Plaintiff's request for review.  Tr. 10-12.  On August 29, 2007, the Appeals Council extended the time within which Plaintiff could file a civil action.  Tr. 8.

## BACKGROUND

Plaintiff was 33 at the time of the hearing.  Tr. 56, 907.  He completed 12 years of high school but did not receive a diploma.  Tr. 141, 933-34.  Plaintiff alleges disability as a result of the following conditions:  anxiety disorder, borderline intellectual functioning, hepatitis C, attention deficit hyperactivity disorder (ADHD), seizures, depression, personality disorder, and tendonitis.

## I.  Plaintiff's Testimony.

At the hearing, Plaintiff testified he has hepatitis B and C, which make him tired all the time.  He stated his physical health is otherwise "pretty good."  Tr. 912.  He reported his

concentration is impaired, and he suffers from anxiety.  Tr. 912.
He also stated he has become lightheaded and anxious around
people and his medications have not helped.  Tr. 937.

Plaintiff stated even though he likes to read, he never
finishes a book because he always loses interest.  Tr. 937.  He
testified he can do simple tasks, but only for a short time.  He
also stated he cannot stay focused on one thing long enough to
work 40 hours a week.  Tr. 937-38.

Plaintiff has a history of legal problems that include
convictions for forgery and driving under the influence of
intoxicants (DUII) for which he was required to undergo drug and
alcohol-abuse treatment.  Tr. 913-14.  He lost his driver's
license because of the DUII, but he stated he has not had another
one allegedly because his anxiety disorder prevents him from
driving.  Tr. 915.  He was scheduled to graduate from treatment
the week following the hearing before the ALJ.  Tr. 912.  He
stated he had been clean and sober for the six months prior to
the hearing.  Tr. 912.

In a March 4, 1997, Reconsideration Disability Report,
Plaintiff stated he wakes up with the "shakes" and feels like he
needs to escape.  Tr. 98.  He also indicated he has difficulty
going places by himself, does not like shopping in grocery stores
in particular, and his medication is not very helpful for his
symptoms.  Tr. 101.

5  -   OPINION AND ORDER

In a series of undated function and daily activities reports, Plaintiff stated his heart often begins to pound and he suffers from shaking and trembling when he is at work.  Tr. 123. This shaking causes him difficulties with walking, climbing, lifting, and using his hands.  Tr. 109.  He also reported difficulty in sleeping, buying groceries, shopping for clothes, banking, and going to the post office because his "heart and body trembles."  Tr. 106, 109.  In addition, he feels hot and must leave the room if he attends clubs, social groups, or church. Tr. 106.  He stated he sometimes gets stressed and confused, which causes him difficulties with concentration, memory, understanding, and sleeping.   Tr. 109.  For example, he stated it takes him longer to cook than it used to because he gets confused easily.  Tr. 107.

In a July 30, 2001, Functional Abilities Questionnaire, Plaintiff reported he does not drink any alcoholic beverages, he takes Xanax once daily for anxiety, and he suffers from an occasional upset stomach and racing heartbeat.  Tr. 168-70.  In a July 30, 2001, Daily Activities Report, Plaintiff reported he does household chores only when they must be done, shops for food twice weekly, and likes to read but seldom finishes a whole book. Tr. 519-21.

In Adult Disability Reports completed September 5, 2001, and June 12, 2002, Plaintiff reported depression, ADHD, anxiety, low

6  -   OPINION AND ORDER

intelligence, poor concentration, and hepatitis C.  Tr. 533-52.

## II.  Medical Evidence.

### A.    Providence Health System Medical Providers.

On January 20, 1993, Vickie O'Donnell, Certified Alcohol and Drug Counselor (CADC), conducted a psychological assessment of Plaintiff as part of his entry to substance-abuse treatment. Tr. 220-23.  She found Plaintiff to be immature with minimal coping skills and possible organic damage due to substance abuse. Tr. 223.  She noted Plaintiff often contradicted himself. Tr. 223.  CADC O'Donnell diagnosed Plaintiff with polysubstance abuse and assessed his GAF score at 52.  Tr. 223.  On February 2, 1993, David Bullock, CADC, completed a treatment discharge summary on Plaintiff.  Tr. 216-17.  CADC Bullock reported Plaintiff had a good response to treatment and diagnosed him as having learning disabilities, chemical dependency, methampheta-amine and marijuana addiction, and past alcohol abuse.  Tr. 216-17.

On August 8, 1995, Andris Antoniskis, M.D., conducted a physical of Plaintiff in the process of admitting him for another substance-abuse treatment program.  Tr. 204. Dr. Antoniskis noted Plaintiff had lower than average intelligence, a methamphetamine addiction, and no physical problems.  Tr. 204-05.  Plaintiff stopped attending his drug-treatment group as soon as his probation ended.  Tr. 200-01.  On September 16, 1995, Plaintiff

7  -   OPINION AND ORDER

was discharged "absent without leave" from drug treatment by Dan
Minkel, National Certified Addiction Counselor (NCAC).  Tr. 200-
201.  On his discharge summary, NCAC Minkel assessed Plaintiff's
GAF score at 52.  Tr. 200-01.

**B.   Dr. Fischer-Davidson.**

On November 25, 1996, Blake Fischer-Davidson, Psy.D.,
conducted a psychological examination of Plaintiff at the request
of Disability Determination Services (DDS).[2]  Tr. 234-39.  During
the evaluation, Plaintiff reported to Dr. Fischer-Davidson that
he began to experience anxiety attacks after he was involved in a
boating accident as a youth.  He stated his anxiety and panic
attacks worsened after a subsequent car accident and a later
assault.  Tr. 236.  Dr. Fischer-Davidson noted Plaintiff had
difficulty concentrating and keeping track of dates.  Tr. 237.
Dr. Fischer-Davidson also noted Plaintiff often repeated himself
when he became concerned about giving the "right answers."  Tr.
237.

Plaintiff's tests indicated a verbal Intelligence Quotient
(IQ) of 73 and a performance IQ of 75, which combined for a full-
scale IQ of 73 on the Wechsler Adult Intelligence Scales-Revised
(WAIS-R).  Tr. 237-38.  Dr. Fischer-Davidson reported Plaintiff's

---

[2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

8  -   OPINION AND ORDER

low IQ scores placed him in the borderline range of intelligence. Tr. 237-38.  Dr. Fischer-Davidson also noted Plaintiff's raw disclosure-level score on the Million Clinical Multiaxial Inventory-II (MCMI-II) was unusually high, which indicates a tendency to be overly self-deprecating, excessively complaining, or extremely vulnerable to feeling defenseless.  Tr. 238.  In addition, such a high disclosure-level score rendered Plaintiff's MCMI-II invalid.  Tr. 238.

Dr. Fischer-Davidson diagnosed Plaintiff with panic disorder, generalized anxiety disorder, alcohol abuse in remission, episodic marijuana abuse, and dependent personality disorder.  He assessed Plaintiff's GAF score[3] at 50 and opined Plaintiff could adapt to a sheltered work environment.

On September 11, 1997, Dr. Fischer-Davidson conducted a DDS-ordered followup psychological evaluation of Plaintiff. Tr. 283.  Dr. Fischer-Davidson observed Plaintiff was fidgeting and had difficulties concentrating during the evaluation. Tr. 285.  Dr. Fischer-Davidson did not readminister the WAIS-R IQ

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

9  -   OPINION AND ORDER

evaluation, but he restated the scores and his conclusions from
the prior examination in his report.  Tr. 285.

Plaintiff completed the Minnesota Multiphase Personality
Inventory-Second Edition (MMPI-2) evaluation, but Dr. Fischer-
Davidson noted he had to read the questions to Plaintiff.  In
addition, Dr. Fischer-Davidson stated Plaintiff's high F-scale
score resulted in an invalid clinical profile, which the doctor
interpreted as a "plea for help."  Tr. 286.

This time Dr. Fischer-Davidson diagnosed Plaintiff with
panic disorder, anxiety disorder, depression, alcohol abuse in
remission, and dependent personality disorder.  He again assigned
Plaintiff a GAF score of 50.  Tr. 286-87.  He opined Plaintiff
could probably do part-time work through a jobs program.
Tr. 286.

C.   Oregon Department of Corrections Medical Providers.

On January 24, 1997, an unidentified physician completed a
psychiatric review technique (PRT) and a mental residual
functional capacity (MRFC) assessment of Plaintiff in which it
was reported that Plaintiff had the severe medical impairments of
borderline IQ function, anxiety disorder with panic attacks, and
alcohol abuse in early full remission.  Tr. 86, 92.  It was the
opinion of the reviewer that those impairments were not expected
to last more than 12 months.  Tr. 86, 92.  In the MRFC, Plaintiff
was assessed with slight limitations in daily activities and

social functioning; moderate deficiencies in concentration, persistence, and pace; and no episodes of decompensation. Tr. 93.

**D. Dr. Wimmers.**

On May 6, 1997, Dick Wimmers, Ph.D., completed a PRT and MRFC on Plaintiff at the request of DDS.  Tr. 111-22. Dr. Wimmers diagnosed Plaintiff with significantly subaverage intellectual functioning, anxiety disorder, and polysubstance-addiction disorder in reported remission.  Tr. 111.  Dr. Wimmers found Plaintiff had moderate limitations in social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  Tr. 118.  Dr. Wimmers also found Plaintiff was moderately limited in his ability to understand, to remember, and to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; and to set realistic goals or to make plans independently of others. Tr. 120-21.  Dr. Wimmers opined Plaintiff should work in a familiar setting with a set routine.  Tr. 122.

**E.   Kaiser Permanente Medical Care Providers.**

On June 18, 1997, Plaintiff presented to Nurse Practitioner (NP) Ken Lease for treatment of fatigue, possibly related to hepatitis C.  Tr. 275.  Plaintiff also reported his anxiety had

11  -   OPINION AND ORDER

improved, and NP Lease noted Plaintiff did not appear anxious.
Tr. 275.  On July 31, 1997, Plaintiff again presented to NP Lease
for treatment of depression.  Tr. 277.  NP Lease noted Plaintiff
might have a possible bipolar disorder and referred him to the
mental-health department.  Tr. 277.  On February 23, 1998,
NP Lease noted laboratory results had confirmed a diagnoses of
hepatitis C.  Tr. 675.  On April 8, 1998, Plaintiff reported to
NP Lease that he had suffered a seizure during the prior week.
Tr. 672.

On June 10, 1999, Terry Kordash, M.D., conducted a followup
examination of Plaintiff for hepatitis A and C.  Dr. Kordash
noted Plaintiff's hepatitis C was under control and his liver
function was intact.  Tr. 390-91.

On April 17, 2001, Andreas Wolf, M.D., diagnosed Plaintiff
with tendonitis caused from "working as a roofer."  Dr. Wolf
prescribed a splint and pain medication to Plaintiff.  Tr. 610-
11.

On July 2, 2001, NP Tim Foulke completed a psychological
evaluation of Plaintiff and diagnosed him with generalized
anxiety and methamphetamine dependence.  Tr. 800.  NP Foulke
assigned Plaintiff a GAF score of 35.  Tr. 800.

**F.   Dr. Burns.**

On June 8, 1998, Caleb Burns, Ph.D., conducted a
comprehensive psychological evaluation of Plaintiff at the

request of DDS.  Tr. 353.  Dr. Burns noted Plaintiff was
"contradictory" during the examination as well as "agitated and
fidgety."  Tr. 354, 359.  He observed Plaintiff had difficulty
following directions, and his memory and concentration were poor.
Tr. 359.

Dr. Burns administered a WAIS-III IQ examination on which
Plaintiff received a verbal IQ score of 69 and a performance IQ
score of 69, which combined for a full-scale IQ score of 66.
Dr. Burns noted Plaintiff's score is in the mild-retarded range
of intellectual ability.  Tr. 361.  In addition, the Wechsler
Memory Scale-3rd Edition (WMS-III) assessment indicated Plaintiff
suffered from memory deficits in all of the areas that were
evaluated.  Tr. 361.  Dr. Burns also noted Plaintiff's Trail-
Making Part A and B scores did not indicate Plaintiff suffered
from any neuropsychological deficits.  Tr. 362.  The MMPI-2
assessment resulted in an invalid administration.  Tr. 363.
Dr. Burns opined Plaintiff's cognitive defects and low-reading
comprehension interfered with his ability to understand and to
answer the questions.  Tr. 363.

Dr. Burns diagnosed Plaintiff with mild mental retardation,
significant anxiety, ADHD, and some depression.  Tr. 363.  He
also noted Plaintiff's symptoms indicated a panic disorder.
Tr. 364.  Dr. Burns assessed Plaintiff's GAF score at 43 and
concluded Plaintiff was "clearly unemployable."  Dr. Burns opined

this unemployable condition would continue even if Plaintiff were to refrain from all substance abuse in the future.  Tr. 364-65.

Dr. Burns also completed an MRFC on Plaintiff.  Tr. 367-69. He found Plaintiff was not significantly limited in his ability to maintain socially acceptable behavior, to be aware of normal hazards and to take appropriate actions against them, to travel to unfamiliar places, or to use public transit.  He found Plaintiff was moderately limited in his ability to carry out short and simple instructions, to make simple work-related decisions, to interact appropriately with the general public, to ask simple questions or to request assistance, and to accept instructions or to respond appropriately to criticism.  Finally, he found Plaintiff was markedly limited in his ability to remember locations and worklike procedures; to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance or to be punctual within customary tolerances; to sustain ordinary routine without supervision; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

In addition, Dr. Burns followed up his evaluation with a letter to Plaintiff's counsel on September 24, 1998, in which he

explained the difference between the WAIS-III scoring system that
he used and the WAIS-R scoring system used by Dr. Fischer-
Davidson.  He explained the WAIS-R was outdated and a full-scale
IQ score of 70 on the WAIS-R would be comparable to a full-scale
IQ score of 67 on WAIS-III.  He noted Plaintiff's current WAIS-
III scores were valid and consistent with the scores previously
obtained when Dr. Fischer-Davidson evaluated Plaintiff.  Tr. 332-
34.

      **G.  Dr. Sacks.**

     On December 13, 2000, Gary Sacks, Ph.D., conducted a
psychological examination of Plaintiff at the request of DDS.
Tr. 376-82.  Dr. Sacks noted Plaintiff's intellect, reasoning
ability, and vocabulary were limited, but he opined Plaintiff's
cognitive functioning was grossly intact.  Tr. 377.  Dr. Sacks
also observed Plaintiff had never sought psychiatric
hospitalization or outpatient treatment for his mental-health
difficulties.  Tr. 379.  Dr. Sacks opined Plaintiff did not
appear to meet the criteria for a panic disorder because he does
not have any difficulty leaving his house unless attending a
function where his performance would be judged.  Tr. 380.

     Using the Shipley Institute of Living Scale assessment,
Dr. Sacks determined Plaintiff's IQ was 70 and diagnosed him with
borderline intellectual function.  Tr. 380.  Plaintiff's MMPI-2
again resulted in a globally-elevated profile, and several

15  -   OPINION AND ORDER

measures of response validity indicated Plaintiff was engaging in extreme over-reporting and exaggeration of his symptoms. Tr. 380.

Dr. Sacks diagnosed Plaintiff with polysubstance dependence in partial remission based on Plaintiff's report and social anxiety-disorder. Dr. Sacks assigned Plaintiff a GAF score of 50. Tr. 381. Dr. Sacks also noted Plaintiff could train for a job that would accommodate his borderline IQ, if he remained sober. Tr. 382.

**H. Dr. Wicher.**

On August 8, 2001, Donna Wicher, Ph.D., P.C., conducted a psychological evaluation of Plaintiff at the request of DDS. Tr. 587-95. She noted Plaintiff had not undergone any treatment for his mental-health problems other than medication. Tr. 588. She found Plaintiff's abilities in memory and concentration to be consistent with his moderate level of intellectual functioning. Tr. 589. As part of his medical history, Plaintiff reported past seizures. Tr. 593.

Dr. Wicher administered the WAIS-III. Plaintiff attained a verbal IQ of 70 and a performance IQ of 76, which combined for a full-scale IQ of 70 and indicated borderline intellectual function. Tr. 589. Dr. Wicher also reported Plaintiff's MMPI-2 profile indicated that he was probably making a conscious effort to exaggerate his level

16 - OPINION AND ORDER

of emotional distress.  Tr. 590.

Dr. Wicher diagnosed Plaintiff with polysubstance abuse, antisocial personality disorder, and borderline intellectual functioning.  She assigned him a GAF score of 55.  Tr. 591-92.

**I.   Robert Henry, Ph.D.**

On September 9, 2002, Robert Henry, Ph.D., completed a PRT and MRFC on Plaintiff.  Dr. Henry diagnosed Plaintiff with borderline mental retardation, antisocial personality disorder, and polysubstance-addiction disorder with no marked or extreme functional limitations.  Tr. 813-26.  Dr. Henry found Plaintiff to be moderately limited in memory, but not significantly limited otherwise.

**J.   Dr. Wood.**

On May 26, 2003, Joe Wood, Psy.D., conducted a psychiatric evaluation of Plaintiff at the request of DDS.  Tr. 832-35. Dr. Wood found Plaintiff to be within the borderline range of cognitive ability.  Tr. 834.  He also noted Plaintiff exaggerated his symptoms.  Tr. 835.  Dr. Wood diagnosed Plaintiff with borderline cognitive ability, amphetamine dependence and polysubstance abuse in sustained full remission, antisocial personality disorder, and social anxiety.  Tr. 835.

**K.   Dr. Rethinger.**

On June 4, 2003, Paul Rethinger, Ph.D., completed a PRT and MRFC of Plaintiff.  Tr. 837-51.  Dr. Rethinger diagnosed

Plaintiff with borderline intellectual functioning, social
anxiety, and polysubstance addiction.  Dr. Rethinger found
Plaintiff was moderately limited in his concentration,
persistence, and pace as well as in his ability to understand, to
remember, and to carry out detailed instructions.  In addition,
Dr. Rethinger noted moderate limitations in Plaintiff's ability
to interact appropriately with the general public and to be aware
of and guard against normal hazards.  Tr. 851-52.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this
burden, a claimant must demonstrate the inability "to engage in
any substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner
bears the burden of developing the record.  *DeLorme v. Sullivan*,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere

18  -   OPINION AND ORDER

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, if the Commissioner determines the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. §§ 404.1520(b), 416.920(b).

In Step Two, if the Commissioner determines the claimant does not have any "medically severe impairment or combination of

19  -   OPINION AND ORDER

impairments," the claimant is not disabled.  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1520©), 416.920©).

In Step Three, the claimant is presumed conclusively to be disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the adjudication proceeds beyond Step Three, the ALJ must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy.  *Yuckert*, 482 U.S. at 141-42.

*See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
Here the burden shifts to the Commissioner to show a significant
number of jobs exist in the national economy that claimant
can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v.
Apfel*, 180 F.3d 1094, 1098 (9ᵗʰ Cir. 1999). If the Commissioner
meets this burden, the claimant is not disabled. 20 C.F.R.
§§ 404.1520(g)(1), 416.920(g)(1).

    If the claimant is found to be disabled and there is medical
evidence of substance abuse, the ALJ must engage in the
sequential five-step inquiry a second time without taking the
claimant's substance abuse into account for the purpose of
determining whether drug addiction or alcoholism "is a
contributing factor material to the determination of disability."
20 C.F.R. §§ 404.1535(a), 416.935(a). It is a "material factor"
when the claimant's remaining limitations would not be disabling
if the claimant stopped using drugs or alcohol. 20 C.F.R.
§§ 404.1535(b), 416.935(b). A claimant is not considered
disabled if drug addiction or alcoholism is a contributing
factor material to the determination of disability. 42 U.S.C.
§ 1382c(a)(3)(J). *See also Bustamante v. Massanari,* 262 F.3d
949, 955 (9ᵗʰ Cir. 2001). In such determinations, the claimant
bears the burden to prove that drug addiction or alcoholism is
not a contributing factor material to his disability. *Ball v.
Massanari*, 254 F.3d 817, 821 (9ᵗʰ Cir. 2001).

## ALJ'S FINDINGS

At Step One, the ALJ found the evidence is insufficient to determine whether Plaintiff had engaged in substantial gainful activity since his alleged onset date.  Tr. 22.  The ALJ noted he had "ample evidence" to suggest Plaintiff has worked since his alleged onset date.  His hours and earnings, however, could not be verified because Plaintiff has worked at jobs where he was paid "under the table."  Tr. 22.  The ALJ, therefore, concluded the evidence is insufficient to determine whether Plaintiff has engaged in substantial gainful activity.

At Step Two, the ALJ found Plaintiff has the severe impairments of polysubstance-abuse disorder, social anxiety disorder, and borderline intellectual functioning.  Tr. 23.

At Step Three, the ALJ found Plaintiff's severe impairment of polysubstance abuse meets Listing 12.09 for substance-addiction disorder and concluded Plaintiff is disabled.

As required under 20 C.F.R. §§ 404.1535(a) and 416.935(a), the ALJ then engaged in the five-step sequential inquiry considering only the impairments and limitations that would remain if Plaintiff discontinued his substance abuse.  Under this inquiry, the ALJ reached a different conclusion in his analysis at Step Three.  The ALJ found Plaintiff's condition does not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 25.  The ALJ then assessed Plaintiff's RFC and

found Plaintiff does not have any exertional limitations.  The
ALJ found, however, that Plaintiff is limited to work activity in
which his Hepatitis C would not be a health issue, that would not
involve any exposure to hazards, that would not require any more
than three simple steps, that would not have any public
interaction, that would not involve any exposure to large groups,
and that would involve only limited interaction with coworkers.

At Step Four, the ALJ found Plaintiff is unable to perform
his past relevant work as a kitchen helper, grinder, or plumbing
laborer.

At Step Five, the ALJ found Plaintiff would be able to
perform jobs that exist in significant numbers in the national
economy if he stopped abusing drugs and alcohol.  Tr. 33.  The
ALJ identified three examples of such work drawn from the
testimony of the VE:  hardware assembler, general cleaner, or
hospital cleaner.  Tr. 33.

In summary, the ALJ concluded Plaintiff is ineligible for
DIB and SSI because polysubstance abuse is a contributing factor
material to the determination as to whether he is disabled and
found Plaintiff would not be disabled if he discontinued his
substance abuse.  Tr. 34.


**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) did not

consider all of Plaintiff's alleged impairments at Step Two;
(2) rejected the lay testimony of Plaintiff's mother;
(3) rejected the opinions of Drs. Fischer-Davidson and Burns,
examining physicians, as to Plaintiff's IQ and cognitive
functioning; (4) failed to find Plaintiff's cognitive impairment
met Listing 12.05 at Step Three; (5) did not follow the Appeals
Council directives in assessing Plaintiff's RFC on remand; and
(6) posed an inadequate hypothetical to the VE at Step Five and
based his conclusion that Plaintiff could perform jobs that exist
in significant numbers in the national economy on the VE's
testimony in response to the inadequate hypothetical.

**I.    ALJ's Assessment of the Severity of Plaintiff's Alleged
        Impairment of Hepatitis C and Failure to Assess his Alleged
        Impairments of ADHD, Seizures, Depression, Tendonitis, and
        Personality Disorder.**

Plaintiff contends the ALJ erred at Step Two when he
improperly found Plaintiff's hepatitis C is not a severe
impairment.  In addition, Plaintiff contends the ALJ erred at
Step Two by failing to assess whether Plaintiff's alleged
impairments of ADHD, seizures, depression, tendonitis, and
personality disorder constituted severe impairments.

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.909, 416.920(a)(4)(ii).  A severe impairment "significantly

24  -   OPINION AND ORDER

limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a),(b); 416.921(a),(b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *Id.*

The Step Two threshold is low.  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .  [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).  The Ninth Circuit described Step Two as a "*de minimus* screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care should be exercised in applying the not severe impairment

concept."  SSR 85-28, at *4.

Only acceptable medical sources can establish medically

determinable impairments.  SSR 06-03p provides:

> Information from [unacceptable medical
> sources] cannot establish the existence of a
> medically determinable impairment.  Instead,
> there must be evidence from an "acceptable
> medical source" for this purpose.  However,
> information from such "other sources" may be
> based on special knowledge of the individual
> and may provide insight into the severity of
> the impairment(s) and how it affects the
> individual's ability to function.

*See also* 20 C.F.R. §§ 404.1513(a), 416.913(a)(Commissioner needs

"evidence from acceptable medical sources to establish whether [a

claimant has] a medically determinable impairment.").  Medical

sources are divided into two categories:  "acceptable" and "not

acceptable."  20 C.F.R. §§ 404.1513, 416.913.  Acceptable medical

sources include licensed physicians and psychologists.  20 C.F.R.

§§ 404.1513, 416.913.  Medical sources classified as "not

acceptable" include, but are not limited to, nurse practitioners,

therapists, licensed clinical social workers, and chiropractors.

SSR 06-03p, at *2.  Although the claimant has the burden at Step

Two to prove he is disabled, the ALJ must consider

"impairment[s]. . . [alleged by the claimant] or about which we

receive evidence" in the form of medical records.  20 C.F.R.

§§ 404.1512(a), 416.912(a).

The ALJ found at Step Two that Plaintiff has the severe

impairments of substance-abuse disorder, social anxiety disorder,

and borderline intellectual functioning.  Tr. 23-24.  The ALJ
found Plaintiff's hepatitis C is not a severe impairment.
Tr. 24-25.  The ALJ did not address Plaintiff's alleged
impairments of ADHD, seizures, depression, tendonitis, or
personality disorder.

### A. Hepatitis C.

The ALJ determined Plaintiff's hepatitis C is not a severe
impairment.  Tr. 25.  The ALJ noted, and the record reflects,
there is not any medical evidence that Plaintiff's work
activities are limited due to hepatitis C.  Tr. 25.  In fact, the
ALJ observed, and the record reflects, Plaintiff's condition has
been stable.  Tr. 25.  For example, Dr. Kordash noted Plaintiff's
hepatitis C was under control and his liver function was intact
on June 10, 1999.  Tr. 390-91.

On this record, therefore, the Court concludes the ALJ did
not err when he found at Step Two that Plaintiff's hepatitis C is
not a severe impairment.

### B. Seizures.

The record reflects Plaintiff reported to NP Lease,
NP Foulke, and Dr. Wicher on April 8, 1998; July 2, 2001; and
August 8, 2001, respectively that he had suffered seizures twice
in the past.  Tr. 593, 672, 799.  Although he stated on numerous
occasions that he had seizures in the past, the record does not
reflect any past diagnoses or treatment for seizures.  In

27  -  OPINION AND ORDER

addition, the record does not reflect any diagnoses of such a neurological impairment or that Plaintiff ever sought treatment for seizures.  As noted, Plaintiff reported a seizure to Dr. Wicher, but the record does not reflect Dr. Wicher made any diagnoses related to seizures.  Thus, the ALJ was not required to address Plaintiff's alleged seizures because they are not a "medically determinable impairment" established by an "acceptable medical source."

On this record, therefore, the Court concludes the ALJ did not err when he did not address Plaintiff's alleged impairment of seizures at Step Two.

**C.    Tendonitis.**

The record reflects Plaintiff sought treatment for arm pain on April 17, 2001.  Tr. 610-11.  Dr. Wolf diagnosed tendonitis of the right arm and treated Plaintiff with pain medication and a splint.  The ALJ, therefore, was required to address Plaintiff's tendonitis because it is a "medically determinable impairment" established by an "acceptable medical source."

On this record, therefore, the Court concludes the ALJ erred when he did not address Plaintiff's alleged impairment of tendonitis at Step Two.

**D.    ADHD.**

The record reflects Plaintiff was diagnosed as ADHD by Dr. Burns on June 8, 1998.  Tr. 363.  Thus, the ALJ was required

28  -   OPINION AND ORDER

to address Plaintiff's ADHD because it is a "medically
determinable impairment" established by an "acceptable medical
source."

On this record, the Court concludes the ALJ erred when he
did not address Plaintiff's alleged impairment of ADHD at Step
Two.

    **E.    Depression.**

The record reflects Plaintiff was diagnosed with depression
by both Dr. Fischer-Davidson on November 25, 1996, and Dr. Burns
on June 8, 1998.  Tr. 286,  360.  Thus, the ALJ was required to
address Plaintiff's depression because it is a "medically
determinable impairment" established by an "acceptable medical
source."

On this record, the Court concludes the ALJ erred when he
did not address Plaintiff's alleged impairment of depression at
Step Two.

    **F.    Personality Disorder.**

The record reflects Plaintiff was diagnosed with personality
disorder by Dr. Fischer-Davidson on November 25, 1996, and
September 11, 1997.  Tr. 239, 286.  In addition, Drs. Wicher,
Henry, and Wood also diagnosed Plaintiff with personality
disorder.  Tr. 591, 826, 835.  Thus, the ALJ was required to
address Plaintiff's personality disorder because it is a
"medically determinable impairment" established by an "acceptable

29  -   OPINION AND ORDER

medical source."

On this record, the Court concludes the ALJ erred when he did not address Plaintiff's alleged impairment of personality disorder at Step Two.

In summary, the ALJ did not err when he found at Step Two that Plaintiff's hepatitis C is not a severe impairment, nor when he did not address Plaintiff's alleged impairment of seizures. The ALJ did err, however, when he failed to address at Step Two Plaintiff's alleged impairments of ADHD, depression, tendonitis, and personality disorder.

## II. Lay-Witness Testimony.

Plaintiff contends the ALJ erred when he rejected the lay-witness testimony of Plaintiff's mother, Stephanie Dennis.

At the hearing, Ms. Dennis testified Plaintiff does yard work for his parents and for one of his parents' neighbors, but he must be closely supervised because he cannot follow simple instructions and has a difficult time completing tasks.  Tr. 943, 945, 949.  She gave an example of an occasion when he dug up a healthy plant instead of removing a dead one as requested. Tr. 951.  In addition, she reported Plaintiff worked for approximately 1 1/2 years at his father's plumbing business, but he did such poor-quality work and garnered so many complaints that he was eventually fired.  Tr. 945.

On November 30, 1996, and August 3, 2002, Ms. Dennis

completed Third Party Activities Questionnaires in which she stated Plaintiff engages in negative conversations and takes offense easily.  Tr. 73.  She also reported Plaintiff no longer attends parties, argues with and takes offense easily with his friends, cannot drive safely because he is "too nervous and impatient," does not handle money responsibly, and is very nervous around people who are not already his friends.  Tr. 74-75, 79-80.  In addition, Ms. Dennis stated Plaintiff does not get along well with his coworkers or employers when he is working because he needs too much supervision, does poor quality work, is not dependable, and gives up easily.  Tr. 565.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

Here Ms. Dennis related her observations of Plaintiff's behavior pertaining to many of his alleged mental impairments that are supported by medical evidence in the record.  The ALJ considered the testimony of Ms. Dennis and found it unhelpful in determining Plaintiff's limitations or in substantiating

Plaintiff's claim of disability.  Tr. 32.  The ALJ reasoned Ms.
Dennis was only able to report the problems Plaintiff had in
completing tasks, but she was "unable to detail the cause of
[those] problem[s]."  Tr. 32.  It is not, however, the
responsibility of the lay witness to link symptoms to
impairments.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.
1996)("medical diagnoses are beyond the competence of lay
witnesses").  The ALJ did not find Ms. Dennis's testimony
inconsistent with the medical evidence nor did he find her
testimony not credible.

On this record, the Court finds the ALJ erred when he
improperly rejected the lay testimony of Ms. Dennis because he
did not provide legally sufficient reasons germane to this lay
witness for doing so.

**III. Opinions of Examining Physicians as to Plaintiff's Cognitive
      Functioning.**

Plaintiff contends the ALJ erred when he rejected the
opinions of Drs. Fischer-Davidson and Burns, examining
physicians, as to Plaintiff's IQ and cognitive functioning.

On the WAIS-R administered by Dr. Fischer-Davidson,
Plaintiff obtained a verbal IQ of 73 and a performance IQ of 75,
which combined for a full-scale IQ of 73.  Tr. 237-38.
Dr. Fischer-Davidson reported Plaintiff's low IQ scores place him
in the borderline range of intelligence.  Tr. 237-38.  On the
WAIS-III administered by Dr. Burns, Plaintiff obtained a verbal

32  -  OPINION AND ORDER

IQ score of 69 and a performance IQ score of 69, which combined for a full-scale IQ of 66. Dr. Burns noted Plaintiff's IQ scores place him in the mild-retarded range of intellectual ability. Tr. 361. In addition, the WMS-III administered by Dr. Burns indicated Plaintiff suffers from memory deficits in all of the areas that were assessed. Tr. 361.

As noted, the ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). *See also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57.

In rejecting the opinions of Drs. Fischer-Davidson and Burns as to Plaintiff's cognitive functioning, the ALJ remarked that the IQ scores established by Dr. Fischer-Davidson were "different and higher" than those found by Dr. Burns. Tr. 26. The ALJ acknowledged Dr. Burns's letter dated September 24, 2004, in which he explained that the WAIS-R was outdated, a score of 70 on the WAIS-R would be comparable to full-scale IQ score of 67 on WAIS-III, and Plaintiff's current WAIS-III scores were valid and

consistent with those previously obtained by Dr. Fischer-Davidson. Tr. 332-34. The ALJ, however, noted Dr. Burns also stated he could give only a rough approximation of the relationship between WAIS-R and WAIS-III scores and that individuals may test differently in different circumstances. Tr. 26, 332. The ALJ then pointed out that Plaintiff was engaged in substance abuse at the time of the evaluations of Drs. Burns and Fischer-Davidson, which could have an adverse impact on Plaintiff's IQ score. Tr. 26. The ALJ also noted Plaintiff was "still left with IQ scores in the 70s." Tr. 27. The ALJ concluded, therefore, Plaintiff's IQ scores were "merely pictures of the claimant's intellectual functioning at specific times."

The ALJ's reasons for rejecting the opinions of Drs. Fischer-Davidson and Burns as to Plaintiff's IQ are legally sufficient and supported by the record. For example, Drs. Sacks and Wicher, both examining physicians, determined Plaintiff's full-scale IQ score was 70. Tr. 380, 586. Dr. Wicher also found Plaintiff's abilities in memory and concentration to be consistent with a moderate level of intellectual functioning. Tr. 589. Dr. Sacks also opined Plaintiff could train for a job that would accommodate his borderline IQ, if he remained sober. Tr. 382. In addition, Dr. Wimmers, a reviewing physician, found Plaintiff had only moderate limitations in maintaining social functioning; in maintaining concentration, persistence, and pace;

in his ability to understand, to remember, and to carry out detailed instructions; in maintaining attention and concentration for extended periods; in working in coordination with or in proximity to others without being distracted by them; in interacting appropriately with the general public; and in setting realistic goals or making plans independently of others. Tr. 120-21. Dr. Wimmers also opined Plaintiff could work in a familiar setting with a set routine. Tr. 122. Finally, Dr. Henry, a reviewing physician, found Plaintiff to be moderately limited in memory, but not significantly limited otherwise.

The Court, therefore, concludes the ALJ did not err when he rejected the opinions of examining physicians Dr. Fischer-Davidson and Dr. Burns as to Plaintiff's IQ and cognitive functioning because the ALJ gave legallly sufficient reasons supported by the record for doing so.

## IV.  Analysis of Plaintiff's Cognitive Functioning as a Listed Impairment.

Plaintiff contends the ALJ erred at Step Three when he found Plaintiff's cognitive impairment did not meet Listing 12.05.

As noted, the ALJ must determine at Step Three whether any of a claimant's impairments or combination of impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See*

35  -   OPINION AND ORDER

*also* 20 C.F.R. §§ 404.1520(d), 416.920(d).  To properly determine whether a claimant meets or equals a listing, the ALJ must consider all of that claimant's medically determinable impairments, including severe and nonsevere impairments.  *See Lewis*, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

The ALJ, relying on the PRT completed by Dr. Rethinger, found Plaintiff's borderline intellectual functioning caused him mild restriction in the activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  Tr. 26.  In addition, the ALJ also performed an analysis under Listing 12.05.  As noted, the ALJ relied on medical evidence in the record to support his conclusion that Plaintiff has full-scale IQ scores of 70 and does not have marked restriction or difficulties in activities of daily living; social functioning; or concentration, persistence, and pace, at least two of which would be necessary to meet Listing 12.05.  Tr. 26.  Thus, the ALJ concluded Plaintiff did not meet any mental impairment Listing.  Tr. 26.

The Court, however, has already concluded not all of Plaintiff's medically determinable impairments were evaluated by the ALJ at Step Two, which is a necessary prerequisite to determining whether Plaintiff's impairments meet or equal a

listing at Step Three.  The ALJ, therefore, must address those impairments in order to determine whether Plaintiff's impairments meet any mental-impairment Listing.

**V.    Assessment of Plaintiff's RFC on Remand.**

Plaintiff contends the ALJ failed to "correctly summarize" the medical expert (ME) testimony given at the second hearing on May 9, 2001, as directed by the Appeals Council in its remand.

On remand from the Appeals Council, the ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 404.977(b).  *See also Bindner v. Astrue*, No. EDCV 07-995, 2008 WL 2557480, at *1 (C.D. Cal., June 23, 2008).

In its second remand, the Appeals Council found the ALJ in his opinion following the May 9, 2001, hearing "incorrectly related the medical expert's testimony" as reflected in an audit of the hearing tape.  Tr. 470.  Thus, the Appeals Council directed the ALJ upon the second remand to reassess Plaintiff's RFC at the next hearing, which was held May 13, 2004.  Tr. 471. In other words, the Appeals Council did not order the ALJ upon second remand to summarize the ME testimony given at the May 9, 2001, hearing, but directed the ALJ to reassess Plaintiff's RFC because the ALJ presiding over the May 2001 hearing misstated the ME testimony and, as a result, improperly relied on it as a basis

for his evaluation of Plaintiff's RFC in his opinion issued June 15, 2001. Here the ALJ followed the Appeals Council directive when he reassessed Plaintiff's RFC based on the medical evidence in the record upon the second remand.

Accordingly, the Court concludes on this record that the ALJ did not fail to follow the Appeals Council directives upon the second remand even though the ALJ's assessment of Plaintiff's RFC was ultimately inadequate.

**VI.  Remaining Issues.**

Plaintiff contends the ALJ erred at Step Five by posing an inadequate hypothetical to the VE and, based on the VE's testimony, by concluding Plaintiff could perform jobs that exist in substantial numbers in the national economy.

The Court, however, need not address these issues because, as noted, the Court has already determined the ALJ improperly assessed Plaintiff's RFC and that the inadequate RFC formed the basis of the ALJ's hypothetical posed to the VE.


**REMAND**

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an

38  -  OPINION AND ORDER

award of benefits where the record has been fully developed and
where further administrative proceedings would serve no useful
purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178.  The
court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id*.  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id*. at 1178 n.2.

On this record, the Court finds there are outstanding issues
to be resolved before "a determination of disability can be
made," including, but not limited to, (1) a determination as to
whether Plaintiff's impairments or combination of impairments,
including his ADHD, depression, personality disorder, and
tendonitis, are severe impairments and whether they meet or equal
a listed impairment and (2) a reassessment of Plaintiff's RFC
considering the alleged impairments not addressed by the ALJ and
the lay testimony of Stephanie Dennis.  The Court, therefore,
concludes on this record that a remand of this matter is

39  -  OPINION AND ORDER

necessary for further administrative proceedings consistent with this Opinion and Order.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

With respect to future proceedings in this matter after remand, § 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id.* at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court

40  -   OPINION AND ORDER

orders as follows:  If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such application within 60 days from the receipt of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 14th day of November, 2008.


__/s/ Anna J. Brown_____
ANNA J. BROWN
United States District Judge

41  -  OPINION AND ORDER